**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants,**

**Certified Color Manufacturers Association and the Cosmetic, Toiletry and Fragrance Association, Intervenor-Defendants.**

**FOUNDATION FOR NUTRITIONAL ADVANCEMENT, et al., Plaintiffs,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants,**

**The Cosmetic, Toiletry and Fragrance Association, Intervenor-Defendant.**

**Civ. A. Nos. 85–209, 85–1573.**

United States District Court, District of Columbia.

Feb. 13, 1986.

William B. Schultz, Katherine A. Meyer, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for Public Citizen et al.

Anthony J. Roccograndi, William H. Kenety, Washington, D.C., for Foundation for Nutritional Advancement.

Robert C. Seldon, Asst. U.S. Atty., Office of U.S. Atty., Washington, D.C., for Dept. of Health and Human Services.

Daniel Thompson, John McKenna, Washington, D.C., for Certified Color Mfrs. Ass'n.

Robert M. Sussman, Ellen J. Flannery, Washington, D.C., for Cosmetic Toiletry and Fragrance Ass'n.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motion of plaintiffs Public Citizen, Nancy H. Simpson, Phillip L. Weinberg, and Mary L. Rooney (hereinafter collectively Public Citizen) for summary judgment, the motion of plaintiff Foundation for Nutritional Advancement for summary judgment, the cross-motion for summary judgment filed by the federal defendants, the Department of Health and Human Services (HHS), Margaret M. Heckler, the former Secretary of HHS, the Food and Drug Administration (FDA), and Frank D. Young, the Commissioner of the FDA, and the cross-motions for summary judgment filed by intervenor-defendants Certified Color Manufacturers Association (CCMA) and the Cosmetic, Toiletry and Fragrance Association (CTFA).

In their complaints, plaintiffs challenge the defendants' actions relating to nine color additives.[1] These additives currently are "provisionally" listed as safe for use pursuant to the transitional provisions of the 1960 Color Additive Amendments (CAA) to the Food, Drug and Cosmetic Act (FDC Act), 21 U.S.C. § 376 (1982). Plaintiffs allege that the defendants have violated the CAA and the underlying FDC Act, as well as the unreasonable delay prohibition in the Administrative Procedure Act (APA), 5 U.S.C. § 706(1) (1982), by continuing to provisionally list the nine additives. Plaintiffs seek to have the Court enjoin the defendants from using the provisional list or any other means to allow the sale of these nine additives unless, within 30 days of the Court's order, they have been listed as safe pursuant to the requirements of the CAA.

### Statutory Framework

The CAA of 1960, 21 U.S.C. § 376, established a comprehensive system for regulating the use of color additives in foods, drugs, and cosmetics. The CAA provide that a color additive is "unsafe" under the FDC Act, and thereby prohibited from sale in interstate commerce, unless the Secretary has "permanently listed" the additive on the basis of a finding that it is safe for its intended use. 21 U.S.C. §§ 376(a), (b).

While proof of safety is being developed, the CAA permit the continued use of color additives that were established commercially before the statute was enacted. The criteria for the continued use of those colors are contained in special transitional provisions. Pub.L. No. 86–618, § 203, 74 Stat. 404 (1960).[2] Under those provisions, all existing colors were automatically deemed to be "provisionally listed" for the first two and one-half years after the CAA's enactment. *Id.* at § 203(a)(2). Thereafter, the FDA was given discretion to grant additional extensions of the provisional listings "if in [the FDA's] judgment such action is consistent with the objective of carrying to completion in good faith, as soon as reason-

---

**1.** The complaints originally challenged the continued provisional listing of ten color additives. Since the inception of this lawsuit, one of those colors, Yellow No. 5, has been permanently listed, which moots plaintiffs' complaints as to it. *See* 50 Fed.Reg. 35774–83 (Sept. 4, 1985). The nine remaining color additives are Orange No. 17, Red Nos. 3, 8, 9, 19, 33, 36, and 37, and Yellow No. 6.

**2.** The transitional provisions of the CAA appear as a "note" to 21 U.S.C. § 376. Hereafter, they will be cited by section numbers.

ably practicable, the scientific investigations necessary for making a determination" concerning the colors' permanent listing. *Id.* The statute provides that the purpose of the transitional provisions is

> to make possible, on an interim basis for a reasonable period, through provisional listings, the use of commercially established color additives to the extent consistent with the public health, pending the completion of the scientific investigations needed as a basis for making determinations as to [permanent] listing of such additives....

§ 203(a)(1).

### Regulatory Background

In the early 1960's, more than 190 color additives were provisionally listed. By September 1976, that number had been reduced to 84. The FDA then decided that, because of evolving scientific standards, additional testing was required with respect to 52 of the colors. For 32 of those colors, long-term chronic toxicity studies were required to replace those deemed insufficient for a final decision. Accordingly, the Commissioner extended the closing dates for those 32 additives until January 31, 1981. Shorter extensions were provided for the other 20. Public Citizen challenged the Commissioner's decision in *Health Research Group v. Califano*, No. 77–293 (D.D.C.1977); the District Court upheld the FDA's action.

By 1981, the number of additives on the provisional list had been reduced to 23. At that time, the Commissioner further extended the closing dates to permit the completion and regulatory evaluation of the ongoing chronic toxicity tests. Public Citizen again challenged the extensions, which again were upheld by the District Court and the Court of Appeals. *See McIlwain v. Hayes,* 530 F.Supp. 973 (D.D.C.1981), *aff'd,* 690 F.2d 1041 (D.C.Cir.1982).

In the period between *McIlwain* and the filing of the instant case, the agency resolved the status of 13 of the 23 colors that remained on the provisional list. Closing dates for the other ten were periodically extended to allow for the review of scientific test data. On December 17, 1984, Public Citizen petitioned the FDA to ban the use of the ten colors that remained on the list. On January 22, 1985, Public Citizen filed its complaint in this case, seeking the same relief. The Foundation for Nutritional Advancement, and its Executive Director Curtis C. Cutter, filed a complaint on May 16, 1985, which also sought removal from the market of the remaining provisionally listed color additives. The two cases were consolidated by Order of July 15, 1985. On June 21, 1985, the Commissioner of Food and Drugs denied Public Citizen's December 1984 petition. That action mooted the federal defendants' earlier motion to dismiss, or in the alternative, for summary judgment (which was based on a failure to exhaust administrative remedies).

After the filing of the cross-motions for summary judgment at issue here, the FDA issued a final rule extending the provisional listing of nine color additives (50 Fed. Reg. 35783–89 (Sept. 4, 1985)) and permanently listing Yellow No. 5 for cosmetic and external drug uses (50 Fed.Reg. 35774–83 (Sept. 4, 1985)).

### The Food, Drug and Cosmetic Act

Plaintiffs argue that the extensions of the provisional listings violate the FDA Act because (1) the transitional provisions of the Color Additives Amendments require the FDA to make a "prompt" decision on permanent listings of color additives after the industry submits test data, and (2) the Delaney Clause (21 U.S.C. § 376(b)(5)(B)) absolutely prohibits continued marketing of color additives that have caused cancer in animals. The Court rejects both of those contentions. The Court finds that the latest extension of the provisional listings of the nine food additives was within the FDA's authority and was a legitimate exercise of the FDA's discretion. The Court also finds the Delaney Clause inapplicable to the present situation.

### A. *The Prompt Decision Issue*

The CAA do not limit the number of extensions of provisional listings that

the FDA may grant. In fact, the language of the statute specifically contemplates that multiple extensions may be necessary. *McIlwain,* 690 F.2d at 1046. Congress limited the FDA's discretion in granting extensions of provisional listings in two respects only: (1) such postponements must be consistent with the public health, and (2) the FDA must determine that the scientific investigations are going forward in good faith and will be completed as soon as reasonably practicable. *Id.* at 1047. The Court finds that the record adequately supports the FDA's conclusion that the extensions meet these standards.

### 1. *Need For Further Investigative Review*

In the final rule extending the provisional listings of the nine color additives, 50 Fed.Reg. 35783 (Sept. 4, 1985), the FDA set forth the circumstances necessitating further delay with respect to each additive. Tests for Red Nos. 8, 9, 19, and 37 and Orange No. 17 have indicated that these colors do produce tumors in laboratory animals when fed in high doses. However, the CTFA submitted quantitative risk assessments which demonstrate "extremely small upper bound levels of risk from the petitioned uses of these additives." 50 Fed.Reg. 26377, 26379 (June 26, 1985). Certain FDA scientists questioned the assumptions and resulting calculations in the assessments. In order to resolve these questions, the FDA formed a special Color Additives Scientific Review Panel. This Panel prepared a draft report which was circulated to scientists around the country for their review and comment. The FDA extended the provisional listing of these five colors to permit the Panel to review the comments and prepare a final report, and to allow the FDA to evaluate the report and act on it.

The FDA extended the provisional listing of Red No. 3 because the FDA was awaiting a report from the Color Additives Scientific Review Panel on whether this additive works by a secondary mechanism (that is, the color may have physiological effects that produced tumors at high doses in animals but would not occur at the lower dose levels typical of human exposure). *Id.* at 35786. Testing of Red Nos. 33 and 36 has not produced tumors in animals, but the FDA is requiring quantitative risk assessments of those colors based on the comparative toxicity of those colors with a related color found to be carcinogenic in rats, Red No. 9. *Id.* at 35788. The last additive, Yellow No. 6, has caused kidney lesions in rats, but the FDA questions the significance of those lesions. The extension of the provisional listing of Yellow No. 6 is necessary to permit the FDA to review new kidney slides and to make decisions about the carcinogenic impurities in this color additive. *Id.* at 35787.

### 2. *Consistent with the Public Health*

In the final rule promulgating this last extension of the provisional listings, the FDA explicitly found that the continuation of the provisional listings of those color additives was consistent with the public health. *Id.* at 35784. The Court finds ample evidence in the record to support that conclusion. Six of the colors have induced tumors in laboratory animals at high doses. Nevertheless, there is substantial evidence that the risk these colors pose to humans is extraordinarily small. For Red Nos. 3, 9, and 19, and Orange No. 17, the CTFA risk assessments have shown these additives to present a maximum "worst case" human risk no higher than one in one million. Red No. 8 is related to Red No. 9, and Red No. 37 is related to Red No. 19.

Two of the remaining three additives, Red Nos. 33 and 36, have not produced tumors in animals, and the FDA's decision to extend their provisional listing is based solely on their similarity to Red No. 9, which has been found carcinogenic. As for Yellow No. 6, none of the studies conducted to date has demonstrated a carcinogenic response in rodents; the only concern that has been expressed involves unusual kidney lesions in female rats that the FDA believes merit further review.

Consequently, the Court finds that the FDA was well within its statutory authority in extending the provisional listings of the nine color additives. As in *McIlwain*, this finding of statutory authority largely answers any question of the FDA's abuse of discretion. The FDA's action properly could be overturned only if it were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Section 10(e)(2)(A) of the APA, 5 U.S.C. § 706(2)(A) (1982). Because the FDA's actions have ample support in the record, the Court finds no abuse of discretion in extending the provisional listings.

B. *The Delaney Clause*

■■■ Plaintiffs argue that even if the criteria for continued provisional listing have been met, the FDA is required to delist these colors because the Delaney Clause would bar their permanent listing. The Court finds the Delaney Clause inapplicable to provisionally listed colors and also concludes that the issue of the propriety of permanently listing these colors is not ripe for review.

The Delaney Clause states that:

A color additive (i) shall be deemed unsafe, and shall not be listed, for any use which will or may result in ingestion of all or part of such additive, if the additive is found by the Secretary to induce cancer when ingested by man or animal, or if it is found by the Secretary, after tests which are appropriate for the evaluation of the safety of additives for use in food, to induce cancer in man or animal, and (ii) shall be deemed unsafe, and shall not be listed, for any use which will not result in ingestion of any part of such additive, if, after tests which are appropriate for the evaluation of the safety of additives for such use, or after other relevant exposure of man or animal to such additive, it is found by the Secretary to induce cancer in man or animal.

21 U.S.C. § 376(b)(5)(B). The Delaney Clause is not a part of the transitional provisions of the CAA and does not apply to provisionally listed colors. While safety concerns play an important role in the FDA's provisional listing decisions, the statute simply requires the FDA to determine that any extensions it grants are "consistent with the public health." Section 203(a)(1). The FDA has made such a determination for each of the additives at issue, and the Court has found that determination to be amply supported by the evidence.

■■■ The difficulty, of course, is that six of the nine colors at issue have been found to cause cancer in laboratory animals when ingested at high doses. Plaintiffs argue that there is no justification for provisionally listing such colors, because the Delaney Clause would bar their permanent listing. This would be true, unless the FDA can approve colors that present *de minimis* risks.

■■■ The Commissioner has concluded that the FDA has sufficient discretion to approve color additives in such circumstances. *See* Commissioner Young's Response to Public Citizen's Citizen Petition to Ban 10 Provisionally Listed Color Additives, Letter to Sydney M. Wolfe, M.D., Director, and Peter Lurie, Staff Researcher, June 21, 1985, pp. 28–35. The FDA is in the process now of determining whether these additives will be permanently listed under a *de minimis* interpretation of the Delaney Clause. As the FDA has not yet decided to exercise that discretion, the Court finds that the legality of such discretion is not yet ripe for review. The FDA plans to make permanent listing decisions as to these additives in the relatively near future. If the additives are permanently listed, then the plaintiffs will be free to invoke the procedure for seeking judicial review of permanent listing decisions. *See* § 706(d) of the FDC Act, 21 U.S.C. § 376(d) (1982). Once permanent listing decisions are made, a reviewing court would have the benefit of the FDA's definitive views on the applicability of the Delaney Clause to the six colors. Consequently, judicial interpretation of the Delaney Clause is premature at this time.

*The Administrative Procedure Act*

In addition to arguing that the defendants' actions violate the terms of the CAA and the FDC Act itself, plaintiffs allege that the defendants' actions constitute unreasonable delay under the APA. The APA requires that "within a reasonable time, each agency shall proceed to conclude matters presented to it" and directs a reviewing court to "compel agency action . . . unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1) (1982).

Plaintiffs point to two different instances of allegedly unreasonable delay. First, they cite the fact that these nine color additives have been provisionally listed for 24 years, which they argue is a far longer period than Congress ever intended for dyes to be provisionally listed. Second, they argue that defendants have had more than 29 months to decide on the safety of eight of the dyes, and 17 months to decide on the safety of Red No. 36, while the statute contemplated that such reviews would take only six months.

Plaintiffs observe correctly that the reasonableness of the delay must be judged in the context of the statute. *Public Citizens Health Research Group v. Commissioner, FDA*, 740 F.2d 21, 34 (D.C. Cir.1984). In this case, the FDA's decision to extend the provisional listings, and to delay a decision on permanent listing, is made "in the context of" the transitional provisions of the CAA. As the Court of Appeals recognized in *McIlwain*, "the statute sets no limit upon the number of extensions the Commissioner may grant." 690 F.2d at 1046. As long as the statutory criteria of the transitional provisions are satisfied—as they are in this case—the FDA's extension of the provisional listings and deferral of decisions on permanent listings cannot be considered "unreasonably delayed" under the APA.

Consequently, the Court does not find defendants to be exceeding either their statutory authority or their statutorily granted discretion. The Court denies the motions of plaintiffs for summary judgment and grants the motions of defendants and intervenor-defendants for summary judgment. An Order to this effect accompanies this Memorandum Opinion.